91  425<br>20ap381

THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN R. KRU-
SHINSKY, Relator, *v.* JAMES J. MARTIN and Others, Police Commis-
sioners of the City of New York, Respondents.

*New York city — a policeman, passing a civil service examination by a substitute,
may be dismissed without written charges.*

Where a person has been legally appointed a member of the police force of the
city of New York, he obtains a status and rights, of which he can only be
deprived in the manner prescribed by law; but where through fraud he obtains
possession of a certificate of such appointment, or where he never had a valid
title to such a certificate, he acquires no status as a member of the force, and
has none of the rights possessed by a legally appointed member.

Where an applicant for appointment as patrolman on such police force procures
a substitute to pass the mental and physical examinations required of such
applicant for that position, and receives a certificate of appointment through
such fraud and misrepresentation, the police commissioners of the city of New

York have power to make an investigation for the purpose of ascertaining whether he had passed the civil service examinations "as required by statute;" and if, upon such hearing, they determine that the examinations were, in fact, passed by a substitute, they need not make and prefer written charges against him under section 250 of chapter 410 of the Laws of 1882, as amended, but may summarily vacate his appointment and discharge him from the force.

CERTIORARI issued out of the Supreme Court and attested on the 15th day of February, 1895, directed to James J. Martin, Avery D. Andrews, Charles H. Murray and Michael C. Kerwin, composing the board of police commissioners of the police department of the city of New York, commanding them to certify and return to the office of the clerk of the county of New York all and singular the acts and proceedings by them had in the premises, and the affidavits and petitions, notices, writings, documents and other proceedings and things before them, together with their action, decision and proceedings in the premises in regard to the removal of the relator as a member of the police force of the police department of the city of New York.

*Louis J. Grant,* for the relator.

*Theodore Connoly* and *Terence Farley,* for the respondents.

O'BRIEN, J.:

On the 30th of March, 1888, the relator applied to the police commissioners for appointment as a patrolman in the police department of the city of New York. Thereafter he was notified by the secretary of the civil service board to attend competitive physical and mental examinations. The physical examination appears by a statement annexed to the return, and the answers made to the questions upon the mental examination are also to be found in the record. Such examinations having been found satisfactory, the police commissioners on or about the 20th of February, 1890, issued a certificate of appointment to the relator, and thereafter he performed the duties of the office up to the 5th day of February, 1895.

On October 12, 1894, the mayor of the city addressed a communication to the board of police calling attention to certain papers used upon the examination of applicants for appointment on the police force before the civil service board, together with a report of

an expert in handwriting, upon which the claim was advanced that fraud and deceit was by some person practiced on the civil service board. Attention was thus called, among others, to the application and the examinations of the relator, and testimony was adduced tending to show that the original signature to the application, which was concededly in the handwriting of the relator, was entirely different from the handwriting in the answers to questions put upon the examination, and from which the conclusion was deducible that the latter were written by another and distinct person than the one who signed the name of the relator to the application for appointment. As a result the board of police, on November 9, 1894, adopted a resolution directing the relator, among others, to appear before said board on a day and hour named, the resolution stating that it was the intention of the board " to investigate the question whether they have ever passed the civil service examination as required by statute." A copy of this resolution was served on relator, and subsequently, on November 22, 1894, the board made an investigation into the legality of his appointment, informing him that the principal question was as to whether he wrote the answers to the mental examination questions put to him by the civil service board. An opportunity was accorded the relator to demonstrate the fact that he did write them, the proposition being that he should write from dictation the answers to certain questions to be put to him. He was advised by his counsel, however, not to answer questions or make response, and this advice he followed. It is unnecessary to review the testimony, it being sufficient to say that it establishes the fact that the relator procured a substitute to pass the mental and physical examinations for him, and that the certificates given him were procured by fraud and misrepresentation. Thereupon the board adopted a resolution striking the relator's name from the roll of officers of the force.

The position taken by the relator here is that the proceedings against him were illegal, upon the ground that he could not be dismissed from the force until written charges had been made or preferred against him pursuant to section 250 of chapter 410 of the Laws of 1882, as amended by chapter 180 of the Laws of 1884. Upon the merits, therefore, it will be seen that no serious question is presented, the claim being that the procedure adopted, and par-

ticularly the failure to make written charges and serve them on the relator, was irregular, and that the action of the police board in dismissing him cannot be upheld.

The provisions of the law requiring the formulation of written charges and service of the same could only apply to one who had been legally constituted a member of the force. As against the relator such a course was unnecessary, for the reason that the proceedings of the board of police were in the nature of an investigation to ascertain whether or not he was legally a member of the force. When the fact was established that the relator was ineligible for appointment, the board had the right summarily to vacate his appointment, discharge him from the force and refuse longer to recognize him as a member thereof, and this follows as a sequence from the fact that the relator never was legally a member of the force because, being appointed in violation of the civil service laws, his appointment was void *ab initio* and conferred no rights upon the appointee. Where one has been legally appointed on the police force he obtains a status and rights, of which he can only be deprived in the manner prescribed by law. One, however, who obtains possession of a certificate of appointment by fraud, or who never had a valid title to such certificate, acquires no status as a member of the force and has no rights such as are possessed by a legally appointed member. Authorities are abundant to support these views, but as conclusive upon the direct question presented as to the legality of the proceedings taken by the commissioners, we need only refer to the cases of *People ex rel. Kopp* v. *French* (102 N. Y. 586) and *People ex rel. Short* v. *Fire Commissioners* (47 Hun, 528; affd., 114 N. Y. 67).

We think that the writ in this case should be quashed and the proceedings dismissed, with costs.

Van Brunt, P. J., and Follett, J., concurred.

Writ quashed and proceedings dismissed, with costs.