PEOPLE ex rel. PADIAN v. McADOO, Police Com'r.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

MUNICIPAL CORPORATIONS—POLICE OFFICER—DISMISSAL—REINSTATEMENT.

Under New York Charter, Laws 1901, c. 466, p. 180, § 303, providing that absence of any member of the police force without leave for five consecutive days shall be deemed a resignation, and the member so absent shall cease to be a member, and be dismissed without notice, an order of the police commissioner dismissing an officer without a hearing because of absence for more than five days, which absence was continued beyond the time of dismissal, cannot be reversed on certiorari on the ground that the absence was involuntary, and caused by temporary insanity, of which alleged fact there is no evidence.

Certiorari by the people, on the relation of John Padian, against William McAdoo, as police commissioner, to review proceedings of respondent's predecessor in office, dismissing relator from the police department. .Writ dismissed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

William S. Gordon, for appellant.

Theodore Connoly, for respondent.

INGRAHAM, J. The relator was a member of the police department of the city of New York. On the 4th of November, 1903, he disappeared. On November 12th written charges were made of neglect of duty, in that he had been absent from 4 p. m. roll call November 4, 1903, to 4 p. m. November 9, 1903 (five consecutive days), and was still absent. These charges were not served upon the relator, as he could not be found and his whereabouts could not be ascertained. An investigation, however, was made before one of the deputy police commissioners for the purpose of ascertaining whether or not the relator was absent, as had been charged. That investigation proceeded on November 19, 1903, in the absence of the relator, when it was proved that the relator had disappeared; that instead of reporting for duty on November 4, 1903, as he should have done, he had sailed for Europe on that day; that he was not excused or on special duty, and had not reported sick, or obtained any leave of absence; and upon this evidence the deputy commissioner reported that the relator had been absent for five consecutive days without leave, and he was therefore deemed and held to have resigned from the police force of the city of New York, and that judgment be entered that he cease to be a member of the force, and dismissed therefrom without notice, pursuant to the provisions of section 303 of the charter of the city of New York. This report was approved by the commissioner, and the relator dismissed.

Section 303 of the charter of the city of New York (Chapter 466, p. 130, of the Laws of 1901) provides that:

"Absence, without leave, of any member of the police force for five consecutive days shall be deemed and held to be a resignation, and the member so absent shall, at the expiration of said period, cease to be a member of the police force and be dismissed therefrom without notice."

Nothing more was heard of the relator until about March 5, 1904, when there was presented to the respondent, the successor of the commissioner who dismissed the relator, a petition of the relator, alleging that he had no notice of this examination of the witness, or of the charge made against him, and was not present; that on election day, which was November 3d, the petitioner was on duty at a polling place from 4 p. m. until about 10 p. m.; that at midnight the petitioner was ordered to patrol certain posts until the hour of 4 a. m., November 4, 1903; that this long stretch of continuous duty was more than his system could stand in the highly nervous broken condition in which the petitioner was at that time, and the result was that the petitioner became temporarily insane, mentally unbalanced, and not responsible for his actions; that he had no

recollection of his actions between 4 o'clock, a. m., on November 4th until about the middle of December, 1903, when he discovered to his great surprise and amazement that he was at the residence of his father in Ireland, sick and broken in mind and body as the result of the temporary insanity mentioned; that he had no recollection of going to the station house, of changing his clothes, or leaving New York, of the trip on the steamer, or of his arrival in Ireland, or any of his actions between the 4th of November and about the middle of December, 1903, and that his mind during all that time was and still is a perfect blank; that he returned to the United States on the 14th day of January, 1904, then ready and willing to resume his duties as a patrolman in the police department of the city of New York, but was informed that he had been dismissed therefrom; and the petitioner prayed that he might be granted a new trial.

It does not appear from the return that this petition was acted upon by the defendant. The relator, however, alleges in his petition that the respondent refused to grant a new trial or give him an opportunity to present a defense. There is no provision of the charter cited by counsel, or that I am aware of, that gives a police commissioner power to reverse an action of his predecessor, and restore an officer to the force after he has been dismissed. If it had appeared that the respondent denied the application, that denial cannot be reviewed in this proceeding. By section 303 of the charter, the relator's absence from duty for five days is deemed a resignation, and the commissioner was directed to dismiss him from the force without notice. This section of the charter the police commissioner obeyed, and upon the evidence before him his action was entirely regular. It was proved that the relator had been absent from duty for more than five days, and the statute required the police commissioner to remove him without notice. So that upon the record the police commissioner's action in removing the relator was required by the mandatory provisions of the statute, and cannot be reversed.

The relator now claims that his absence from duty was not voluntary or intentional, but caused by temporary insanity. In People ex rel. Mitchell v. Martin, 143 N. Y. 407, 38 N. E. 460, it appeared that the relator in that case had been absent from duty for more than five days; that charges were made against him for such absence, of which he had notice, and there was a proceeding before the commissioner, in pursuance of such charges, at which the relator attended, and proved that his absence was involuntary, and was caused by some sort of mental disturbance, and that notwithstanding that proof the police commissioner dismissed him; and in reviewing that proceeding the court held that he should not have been dismissed after it had appeared that his absence was not voluntary or intentional, but what was designated as "absence arising from the act of God." In that case the fact of the relator's mental condition was proved before the commissioner, and was part of the record before him, and on which he acted, and the court could therefore review the determination, as the fact was before the commissioner when he made the determination under review. In this case there was no such proof before the commissioner when he

acted on it, nor did he assume to dismiss the relator after a trial of which the relator had notice, and at which he was present, but dismissed him under the provisions of the charter to which attention has been called. What the relator now seeks is to be reinstated, and the burden is on him to prove in a proper proceeding that his absence which required his dismissal was not voluntary or intentional, and therefore could not be treated as a resignation. But to entitle him to reinstatement he must prove that fact in a proper proceeding, and, as there is no proof of that fact in the proceeding before us, we cannot act upon it.

The determination which is sought to be reviewed is entirely regular and required by the charter, and this proceeding cannot be maintained.

It follows that the writ must be dismissed, with costs. All concur.