(158 App. Div. 654.)

HYLAND v. WALDO, Police Com'r.

(Supreme Court, Appellate Division, First Department.　November 7, 1913.)

1. MUNICIPAL CORPORATIONS (§ 185*)—POLICE DEPARTMENT—DISMISSAL AND REINSTATEMENT OF POLICEMAN.

Under Greater New York Charter, § 284,† providing that no person who shall have been a member of the police force and shall have been dismissed therefrom shall be reappointed, and section 1543a, added by Laws 1907, c. 723, providing that on written application to the mayor the police commissioner shall have power in his discretion to rehear the charges upon which a member of the police department has been dismissed, unless such dismissal was for conduct unbecoming an officer or member, the police commissioner after dismissing a patrolman from the service for conduct unbecoming an officer, after a trial of charges against him, could not review his own decision and reinstate such patrolman, especially as a police commissioner, upon a trial of members of the force, acts as a special and subordinate tribunal and is subject to the rule which forbids the reopening of a matter once judicially determined by a competent jurisdiction.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509; Dec. Dig. § 185.*]

2. MUNICIPAL CORPORATIONS (§ 185*)—POLICE DEPARTMENT—REMOVAL OF PATROLMAN—REVIEW.

The method of reviewing a determination of a police commissioner finding a patrolman guilty of charges made against him, and dismissing him from the force, is by certiorari.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509; Dec. Dig. § 185.*]

3. MUNICIPAL CORPORATIONS (§ 185*)—POLICE DEPARTMENT—DISMISSAL AND REINSTATEMENT OF POLICEMAN.

Where a police commissioner who had removed a patrolman after a trial of charges against him unlawfully reinstated him, such patrolman was not legally a member of the force, and it was the commissioner's duty, when advised of this fact, to summarily dismiss him, and hence it was not necessary to comply with Greater New York Charter, §§ 300,† 302, relative to the formulation and service of written charges before dismissing a policeman.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509; Dec. Dig. § 185.*]

4. MANDAMUS (§ 10*)—NECESSITY OF CLEAR LEGAL RIGHT.

A writ of mandamus issues only when the petitioner has established a clear legal right to the relief prayed.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 37; Dec. Dig. § 10.*]

Appeal from Special Term, New York County.

Application by William J. Hyland for a peremptory writ of mandamus requiring Rhinelander Waldo, as Police Commissioner of the Police Department of the City of New York, to reinstate the petitioner in the Police Department. From an order denying the writ, the petitioner appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Laws 1901, c. 466.

Hyacinthe Ringrose, of New York City, for appellant.

Archibald R. Watson, Corp. Counsel, of New York City (Harry Crone, of New York City, of counsel, and Terence Farley, of New York City, on the brief), for respondent.

CLARKE, J. On December 9, 1911, the petitioner, who was then a patrolman in the police department of the city of New York, had charges duly served upon him of conduct unbecoming an officer. Said charges were duly tried before a deputy commissioner who found him guilty as charged and recommended that he be dismissed. Said recommendation was on the 24th of February, 1912, duly approved by Commissioner Waldo, and on that day the petitioner was dismissed from the force.

Thereafter, and in the month of March, 1912, Hyland applied to the police commissioner for reinstatement. In support of his application, he submitted numerous letters of recommendation. An affidavit of the commissioner is in this record which states:

"Upon the receipt of these documents deponent again looked into the matter and, after a careful consideration, determined that he had reached an erroneous conclusion with regard to the petitioner's guilt, and that his dismissal from the force was an injustice to him and a wrong which ought to be righted, so far as was within deponent's power to do so. As a condition of reinstating the petitioner, deponent insisted upon a waiver of all back pay. This the petitioner executed."

Thereupon, on the 20th of March, 1912, an order was made by the commissioner as follows:

"William J. Hyland, formerly a patrolman in this department, was dismissed by me on February 24, 1912. I have reconsidered this case and find him not guilty of the charges and specifications upon which he was dismissed, and hereby reinstate him on the force, subject to the approval of the civil service commission."

And upon March 27, 1912, the following communication was addressed to the police commissioner:

"At a meeting of the municipal civil service commission held March 26th, your action rescinding the dismissal of William J. Hyland from the position of patrolman in your department on February 24, 1912, was approved."

From that time and down to December 22, 1912, Hyland performed the duties of said office. On the 20th of December, 1912, the president of the municipal civil service commission addressed a letter to the police commissioner calling his attention to the cases of seven officers, including the petitioner, all of whom were regularly dismissed on charges from the uniformed police force and were afterwards reinstated; that he had received an opinion from the corporation counsel that the reinstatements were illegal and requesting the police commissioner to terminate the employment of these persons. On December 23, 1912, the police commissioner, "in compliance with the directions of the civil service commission," made an order dropping the petitioner's name from the rolls of members of the department. The petitioner applied for a writ of mandamus to compel the police commissioner to reinstate him, which having been denied, this appeal is taken.

[1] The police commissioner, upon the trial of members of the force, acts as a special and subordinate tribunal.

"The rule which forbids the reopening of a matter once judicially determined by a competent jurisdiction applies as well to the decisions of special and subordinate tribunals as to decisions of courts exercising general judicial powers." Osterhoudt v. Rigney, 98 N. Y. 222, 234.

In People ex rel. Chase v. Wemple, 144 N. Y. 478, 481, 39 N. E. 397, 398, the State Comptroller refused to vacate an order on an application for the redemption of certain lands sold for unpaid taxes solely on the ground of want of power. The court said:

"I think he decided correctly in that respect. His action, so far as it was of a judicial character, was bounded and controlled by the strict and limited jurisdiction conferred by the statute. That gave him no right to review his own orders and annul or vacate them except in the single case of the cancellation of a tax sale. * * * But no such authority is given as to an order of redemption. * * * But it is said that, since that officer acts judicially in granting the redemption, he has an inherent power to vacate his own orders. I do not understand that he has any power except that which the statute gives him. It is the general rule that officers of special and limited jurisdiction cannot sit in review of their own orders or vacate or annul them. A justice of the peace cannot set aside or alter a judgment after he has entered it. Stephens v. Santee, 49 N. Y. 39."

In United States v. Burchard, 125 U. S. 176, 8 Sup. Ct. 832, 31 L. Ed. 662, Chief Justice Waite said:

"The law requires a record of the proceedings and decision of the retiring board to be made and transmitted to the Secretary of the Navy, and by him laid before the President for his approval or disapproval, or orders in the case. At first the findings in this case were approved, and orders made thereon, but afterwards the department became satisfied on re-examination that the findings were wrong, and that the incapacity was actually the result of causes incident to the service. Neither the department nor the President could then change the findings, as they had already been approved and were no longer open to review. The action of the President was equivalent to the judgment of an appropriate tribunal upon the facts as found."

In People ex rel. Cohen v. York, 43 App. Div. 138, 59 N. Y. Supp. 333, the relator had been dismissed from the police force upon a charge which had been preferred against him and upon which he was tried, and duly found guilty. Some time afterward he petitioned to have the investigation reopened. Mr. Justice Patterson said:

"The ostensible ground upon which he sought a retrial or reinvestigation was that of newly discovered evidence, not available to him on his trial in 1895, but he also seeks to review certain rulings made or had during his trial. His petition to reopen his case was supported by affidavits which certainly tend to show that the application was not without merit, and that upon a rehearing facts might be made to appear that would exonerate him from the charge upon which he was convicted and dismissed. But we fail to find anything in the powers conferred by law upon the police commissioners, or anything in their rules or regulations, which would authorize them to grant an application such as this. * * * The power of the commissioners respecting the dismissal and reinstatement of police officers is one conferred by law; trials are regulated by law and the rules of the department. * * * There was no duty or obligation upon the police board to open the relator's case and grant him a rehearing. No right to such a rehearing was given him by law."

In People ex rel. Padian v. McAdoo, 114 App. Div. 100, 99 N. Y. Supp. 600, Mr. Justice Ingraham, said:

"There is no provision of the charter cited by counsel, or that I am aware of, that gives a police commissioner power to reverse an action of his predecessor and restore an officer to the force after he has been dismissed."

Section 284 of the Greater New York Charter provides that:

" * * * No person who shall have been a member of the force and shall have been dismissed therefrom, shall be reappointed."

Section 1543a of the charter, added thereto by chapter 723 of the Laws of 1907, provides that:

"Upon written application to the mayor by the person aggrieved, setting forth the reasons for demanding such rehearing, the police commissioner, if the person aggrieved was a member of the police force, * * * shall have the power, in his discretion, to rehear the charges upon which a member of the uniformed police * * * department * * * has been dismissed, unless such dismissal was for * * * conduct unbecoming an officer or member: * * * Provided that such former member of such force * * * shall waive in writing all claim against the city of New York for back pay and provided further that the mayor shall, in writing, consent to such rehearing, stating the reasons why such charges should be reheard."

There are no facts set forth in the moving papers showing that relator had complied with any of these requirements. Further, as the petitioner was removed for "conduct unbecoming an officer," this new provision of the charter expressly excepts his case. So that, by express provision in section 284 and by express exception in section 1543a, a police officer dismissed for conduct unbecoming an officer cannot be reinstated by the police commissioner.

[2] The method of reviewing the determination of the commissioner is by certiorari. It follows that the commissioner had no power to review his own decision after final order entered, and his attempt to reverse his former ruling was a nullity.

[3] The appellant makes the further point that, the police commissioner having exercised jurisdiction over the appellant and restored him to his office, he could not again dismiss him except in the manner provided for in sections 300 and 302 of the charter. This contention is answered in People ex rel. Hannan v. Board of Health, 153 N. Y. 513, 519, 47 N. E. 785, 786:

"He was therefore an officer de facto only, and, while his acts were binding upon the public, he had no title to the position, and it was the duty of the defendants, upon learning the facts, to dispense with his services and appoint a person who possessed the qualifications required by law. * * * In People ex rel. Kopp v. French, 102 N. Y., 583, 585 [7 N. E. 913, 914], Judge Earl said: 'Kopp was not legally a member of the police force. He was ineligible; the police commissioners had no right under the statute to appoint him; and, when it came to their knowledge that he had been convicted of a crime and was therefore ineligible to the office, they had the right summarily to vacate his appointment, discharge him from the police force, and refuse longer to recognize him as a member thereof.' In People ex rel. Krushinsky v. Martin [91 Hun, 425, 428] 36 N. Y. Supp. 851, 853, the court said: 'The provisions of the law requiring the formulation of written charges and service of the same could only apply to one who had been legally constituted a member of the force. As against the relator such a course was unnecessary for the reason that the proceedings of the board of police were in the nature of an investigation to ascertain whether or not he was legally a member of the force. * * * The relator never was legally a member of the force because, being appointed in violation of the civil service laws, his appointment was void ab initio and conferred no rights upon the appointee.'"

In the matter at bar, relator, having been reinstated in violation of the express provisions of law, was not legally a member of the force. It was therefore the duty of the commissioner, when advised of this fact, to summarily dismiss him.

[4] The writ of mandamus issues only when the petitioner has established a clear legal right to the relief prayed:

The order appealed from should therefore be affirmed, with $10 costs and disbursements. All concur.