In the Matter of the Application of ETHEL S. KATZ, Petitioner, Respondent, for an Order Directing SIGISMUND S. GOLDWATER, as Commissioner of the Department of Hospitals of the City of New York, Appellant, to Reinstate Her to Her Civil Service Position as Stenographer-Typewriter, Grade 1, in the Department of Hospitals of the City of New York.

First Department, November 1, 1940.

*Charles F. Murphy* of counsel [*Paxton Blair* and *Denis B. Sullivan* with him on the brief; *William C. Chanler, Corporation Counsel,* attorney], for the appellant.

*Sidney Eisen,* for the respondent.

CALLAHAN, J. This is an appeal from an order directing the commissioner of the department of hospitals of the city of New York to reinstate petitioner to the position of stenographer-typewriter, grade 1, department of hospitals, city of New York.

The facts in this case are not in dispute. It appears that on November 7, 1938, petitioner passed an open competitive examination for the position of stenographer-typewriter, grade 2, held by the municipal civil service commission of the city of New York, and on April 15, 1939, was appointed from a list created as a result of said examination to the position of stenographer-typewriter, grade 1, in the department of hospitals of the city of New York. She continued her duties in said position until April 15, 1940.

On April 10, 1940, upon notice duly given to petitioner, a hearing was held before the municipal civil service commission with regard to her alleged ineligibility to take the examination resulting in her appointment.

At such hearing it was conceded that the statement in petitioner's application that she was eighteen years of age at the time of the making thereof (which was the minimum age permitted) was not true. She did not deny the statement made by the commission that she was only sixteen years of age at the time. The commission thereupon directed that, by reason of her fraud in misstating her age and her lack of qualification to take the examination, her department head should be notified that she had been improperly certified for appointment, not being qualified therefor, and that her services should be terminated. These steps were taken, and petitioner was thereupon removed from her position by defendant, without service on her of charges. She thereupon procured the order appealed from.

The only issue raised concerns the right of her department head to remove her from office without notice of charges, as required by subdivision 2 of section 22 of the Civil Service Law.

Special Term has held that such notice was required, and that her removal, after service of more than six months, was illegal upon a mere certification of ineligibility by the civil service commission. The issue presented, therefore, is whether the procedure adopted in removing petitioner was lawful; or, in other words, whether the petitioner, in view of the fact that she had held her position for more than six months, was entitled to receive notice of charges from her department head with an opportunity to answer, as is provided by subdivision 2 of section 22 of the Civil Service Law with respect to those holding a permanent position in the civil service.

There are various rules of the municipal civil service commission of the city of New York which may have some applicability to the present situation.

Paragraph (a) of subdivision 3 of section VIII of rule V provides for a probationary period of six months for appointees in the competitive class. Section VII of rule III of said rules is applicable

to the disqualification of candidates but relates only to the powers of the commission over those on eligible lists and appointees who are serving their probationary period. Subdivision 3 of section VII of rule V, relating to certification of persons in the competitive class, provides that if a person who is not entitled to be certified is certified, such certification shall be revoked by notification to the appointing officer.

Petitioner contends that reading these rules together the action of the civil service commission in certifying her ineligibility was beyond their powers, in that, under their own rules, their jurisdiction over her had expired after the completion of her six months' probationary service.

We hold that the statute and rules referred to afford no protection to persons whose appointments have been secured through such fraud as to make their appointments illegal and void *ab initio*.

*People ex rel. Krushinsky* v. *Martin* (91 Hun, 425) involved the case of a police officer who had applied for appointment on March 30, 1888, and was appointed on February 20, 1890, on which day a certificate of appointment was issued to him. He performed the duties of his office up to February 5, 1895. Shortly before the last date it was discovered that he had procured his appointment through fraud, having had a substitute pass the examinations for him. The court upheld his removal without the hearing then provided in the Civil Service Law for a permanent employee. The General Term of the Supreme Court said (p. 428) as follows: " The provisions of the law requiring the formulation of written charges and service of the same could only apply to one who had been legally constituted a member of the force. As against the relator such a course was unnecessary, for the reason that the proceedings of the board of police were in the nature of an investigation to ascertain whether or not he was legally a member of the force. When the fact was established that the relator was ineligible for appointment, the board had the right summarily to vacate his appointment, discharge him from the force and refuse longer to recognize him as a member thereof, and this follows as a sequence from the fact that the relator never was legally a member of the force because, being appointed in violation of the civil service laws, his appointment was void *ab initio* and conferred no rights upon the appointee. Where one has been legally appointed on the police force he obtains a status and rights, of which he can only be deprived in the manner prescribed by law. One, however, who obtains possession of a certificate of appointment by fraud, or who never had a valid title to such certificate, acquires no status as a member of the force and has no rights such as are possessed by a legally appointed member."

In *People ex rel. Hannan* v. *Board of Health* (153 N. Y. 513) a statute was involved which forbade a summary removal of a veteran except for incompetency or misconduct shown, after a hearing upon due notice, upon the charge made. The appointee had not passed a required civil service examination, but assumed the duties of the position upon appointment made by the board of health of the city of Troy, without such examination. He continued in office for eight years, whereupon a new board of health removed him without preferring charges. The court said that the relator was not one " holding a position " within the meaning of the statute referred to. It said that the words " holding a position " referred only to a lawful as contrasted with a *de facto* title, and did not protect a usurper who had possession of the office without lawful authority. The term meant only one who held his position according to law and by virtue of a valid appointment. The court said: " In a civilized community ' holding a position ' means lawfully holding it, and it would be unreasonable to declare that the Legislature meant by that expression to include those who held office by force, fraud, mistake, or without any right thereto. * * * As the position in question was subject to the civil service statute and rules, the failure of the relator to pass the examination required made his appointment illegal."

In the present case there is no dispute that this petitioner was ineligible to take this examination because she was two years below the minimum age. She secured admission to the examination by misstating her age in a sworn document. Her deception was not discovered until after her appointment. This delay in discovery is explained by the affidavit submitted by the director of the bureau of investigation of the civil service commission, which shows that in the year when the petitioner was appointed the bureau was required to investigate many thousands of candidates. In order to avoid delay in appointments, certification was made by the civil service commission, with a notation that the appointment would be conditional upon " further investigation by this Commission." The commission states that its investigation was conducted as expeditiously as possible, and in less than a year from the date of her appointment the petitioner was notified to appear for an interview concerning the statements as to her age.

We think that the provisions of the rule of the commission with respect to permanency, and of the Civil Service Law with respect to notice of charges, apply only to those who have been legally appointed, and not to those who have secured appointment through fraud, such as was practiced here. Petitioner was given an opportunity to be heard before the civil service commission and admitted

the essential facts. We think that the commission was authorized to revoke its certification under the circumstances.

We need not concern ourselves with a case where the commission or the department head attempts to act more than six months after the making of a legal appointment. No such situation exists in the present case.

The order should be reversed, with twenty dollars costs and disbursements, and petition dismissed.

MARTIN, P. J., and TOWNLEY, J., concur; DORE, J., concurs in the result; O'MALLEY, J., dissents in memorandum.

O'MALLEY, J. (dissenting). I dissent and vote to affirm. In the cases cited in the majority opinion no examination had been taken by either incumbent. Here, the applicant had taken the examination and passed and, at the time of the discovery of the alleged misrepresentation leading to her admission to the examination, had become a permanent appointee. While not denying a right to challenge her title to the position, I do not think that under the circumstances the civil service commission, as an administrative body, could summarily revoke her certification and appointment. The rules of the commission itself do not give it any jurisdiction over permanent appointees, nor is any statute called to our attention extending their power to that extent. Whatever remedy exists against the petitioner, it should be exerted in a special proceeding or appropriate action by someone with interest sufficient to maintain the action.

I, accordingly, dissent and vote for affirmance of the order.

Order reversed, with twenty dollars costs and disbursements, and the petition dismissed.