In the Matter of the Application of WILLIAM MARINICK, Respondent, for an Order of Mandamus against LEWIS J. VALENTINE, as Police Commissioner of the City of New York, Appellant.

First Department, March 13, 1942.

*Charles F. Murphy* of counsel [*Paxton Blair* and *George G. Gallantz* with him on the brief; *William C. Chanler, Corporation Counsel*], for the appellant.

*Arthur J. W. Hilly* of counsel [*Michael Piznak*, attorney], for the respondent.

COHN, J.    More than four years after he had been duly appointed a patrolman in the police department of the city of New York petitioner on November 13, 1940, was dismissed from his position upon notice to the police commissioner that the municipal civil service commission had revoked its certification which originally led to petitioner's appointment. The action was taken when the commission learned that at the competitive examination for the position petitioner attempted to perpetrate a fraud by placing identifying marks on his test papers.

The facts were brought to light as the result of an investigation conducted by the commissioner of investigation of the city of New York. It was ascertained that of the many candidates who participated in the 1934 examination for patrolman, a small number, including petitioner, had used a code which was intended to identify them to civil service examiners who were to rate their papers. The code employed was (1) to cross the letter " t " with a diagonal stroke instead of a horizontal stroke whenever it was written on the examination paper and (2) to draw on the back of each examination paper a circle or ring in the shape of an apple around the words or numerals indicating the number of sheets. By so identifying themselves the users of these devices hoped to gain an advantage over their competitors in the examination.

The record seems to bear out petitioner's claim that those who employed the symbols were mere dupes for two men who were committing a fraud upon the willing victims. In any event, there was no evidence that this candidate benefited in any way by their use. He passed the written examination on his merits.

Before it finally acted in the matter the civil service commission afforded petitioner the opportunity to present himself and give an explanation. Petitioner admitted using the code in order to obtain a higher rating in the examination. The commission then disqualified him.

The Special Term has held that there was no proof in the record that the appointment was procured through the fraud so as to make it illegal *ab initio* and concluded that petitioner was entitled to a hearing before he could be dismissed.

In view of the petitioner's admission that he attempted to perpetrate a fraud, there was no necessity for the municipal civil

service commission to probe further. As petitioner's appointment was tainted with fraud, we think that the municipal civil service commission had ample power to revoke his certification upon its discovery. Section 14 of the Civil Service Law provides: " Such commissions may refuse to examine an applicant, or after examination to certify an eligible, who is found to lack any of the established preliminary requirements for the examination or position for which he applies; * * * or who has intentionally made a false statement of any material fact, *or practiced, or attempted to practice, any deception or fraud in his application, in his examination,* or in securing his eligibility or appointment." (Emphasis ours.)

The possibility that fraud or attempted fraud may not be discovered until after a name has been certified from an eligible list and an appointment made, is undoubtedly one of the reasons for the adoption of paragraph 3 of section VII of rule V of the rules of the municipal civil service commission, which reads as follows:

" 3. If a person who is not entitled to be certified is certified, such certification shall be revoked by notification to the appointing officer."

In accordance with another rule of the municipal civil service commission (Regulation III, § VI, subds. 6 and 7, ¶ [a]) the following warning appeared upon each of petitioner's examination sheets: " Fill in the spaces in the upper right-hand corner. Write nothing but your answers on this sheet. If you write your name or your number or make any mark other than what is required above, your paper will not be rated."

At the time the examiners of the civil service commission rated petitioner's papers they were not aware of the employment by him of the identifying marks which he admitted were deliberately used. If they had had knowledge of the purpose of these objectionable markings, petitioner's papers would not have been rated, his name would not have been placed on the eligible list and he could not have been certified or appointed. It seems too clear for argument that petitioner may not benefit by reason of the fact that his attempted fraud was not discovered until the lapse of several years. The law is now settled that the municipal civil service commission has power and is under a duty to rescind a certification obtained by fraud or where there is an attempt to defraud. (*Matter of Shraeder* v. *Kern,* 287 N. Y. 13; *Matter of Resnick* v. *Huie,* Id. 607; *Matter of Katz* v. *Goldwater,* 260 App. Div. 495; affd., 285 N. Y. 830.) The power may be exercised upon discovery of the fraud even if the appointment has become permanent. (*Matter of Smith* v. *Hodson,* 287 N. Y. 609; *People ex rel. Hornstein* v. *Moskowitz,*

N. Y. L. J. July 6, 1914, p. 1296 [not officially reported]; affd., 165 App. Div. 979.) In the *Hornstein* case, LEHMAN, J. (now Chief Judge of the Court of Appeals), said: " It is urged, however, that the commission having once certified the relator's name have no power thereafter to reconsider their action. It seems to me that while they have no power to reconsider a certification not due to fraud or mistake, where their action is based upon mistake caused by the applicant's own fraud such fraud and mistake invalidate the original certification and they have power to correct their records to show its invalidity, and have power also to determine the question of fact involved in the claim of fraud and mistake."

In *People ex rel. Finnegan* v. *McBride* (226 N. Y. 252, at p. 258) POUND, J., in stating the applicable law, said: " The action of the commission, had with due deliberation, upon such a matter as the establishment of an eligible list, should, for obvious reasons, be regarded as a finality, but the commission's authority thereon does not wholly cease. It certifies names therefrom for appointment. Error may be corrected by setting it aside if it was the result of illegality, irregularity in vital matters, or fraud. The commission may not act arbitrarily. Public officers or agents who exercise judgment and discretion in the performance of their duties may not revoke their determinations nor review their own orders once properly and finally made, however much they may have erred in judgment on the facts, even though injustice is the result. A mere change of mind is insufficient. Further action must, where power is not entirely spent, be for cause, with good reasons and proper motives for the correction of improper action."

In the public interest, civil service examinations must be kept free from fraud and dishonesty and it is the obligation of a civil service commission to give no place on an eligible list to any candidate who perpetrates a fraud or attempts to practice any deception in an open competitive examination. Confidence in the fairness and integrity of the merit system would be completely undermined if practices like those indulged in here were overlooked or condoned.

The order appealed from should be reversed, with twenty dollars costs and disbursements, the motion denied and the petition dismissed.

DORE and CALLAHAN, JJ., concur; MARTIN, P. J., and TOWNLEY, J., dissent and vote to affirm.

Order reversed, with twenty dollars costs and disbursements, the motion denied and the petition dismissed.