In the Matter of FIESTA REALTY CORP., Respondent, against JOSEPH D. McGOLDRICK, as State Rent Administrator, Appellant, and EUSMELIS SANTIAGO et al., Interveners, Appellants.

First Department, May 25, 1954.

---

*Beatrice Shainswit* of counsel (*Robert H. Schaffer*, attorney), for Joseph D. McGoldrick, appellant.

*George B. Tepper* of counsel (*Whitestone, Tepper & Harrow*, attorneys), for respondent.

BREITEL, J. In 1950 the landlord purchased an abandoned, boarded-up old-law tenement, which had been vacant and unused, except for two stores on the street floor, since 1943. It made certain restorations, the extent of which is disputed, and rented the apartments on the upper floors to foreign language-speaking tenants for whatever rents could be obtained. The question is whether the premises are subject to rent controls under the emergency statute (State Residential Rent Law, L. 1946, ch. 274, as amd.); or whether this has been a conversion from a non-housing to a housing use which is exempt from controls and regulation by the State Rent Administrator (§ 2, subd. 2, par. [g], cl. [1]).

Special Term annulled the determination of the State agency and held that the premises were exempt from controls. It is our view that this was error, and that the premises in question are and remain subject to control by the State agency.

The building, as an old-law tenement, is not subject to the higher standards established for buildings constructed during later periods. It is a slum building in a slum area. In 1943 the building, at the time it was vacated, was declared unfit for human habitation by the city department of housing and buildings. The present landlord, after it purchased the premises in 1950, made certain repairs and restorations to the building. It thereupon obtained permission from the city department to rent the eight apartments in the building, and it also made application to the State Housing Rent Commission to have the apartments declared free from controls. The landlord's application for " decontrol " was made in the course of a proceeding instituted by the local rent administrator, at the request of tenants, to bring the premises under control. The landlord offered proof of the repairs and restorations, and stated the cost of remodel-

ing to be $23,431. An inspector for the State agency examined the building and reported that the repairs had been made. Thereupon a purported order of decontrol was issued by the State agency. Such order was issued and made effective as of June 25, 1951. In connection with that order no protest was filed.

In July, 1952, at the request of the tenants, new proceedings were instituted, again seeking to bring the premises under regulatory control. In August, 1952, the local rent administrator again made a finding that the accommodations were exempt. No protest was filed.

In April of 1953, proceedings were again instituted by the tenants to reopen the proceedings. This time the application was based on the ground that the repairs and restorations by the landlord had not been as extensive as claimed; that there had been no substantial renovation of the building; and that, therefore, the premises had never become eligible for '' decontrol ''; and that the State agency had power to reopen the proceedings because of the fraud practiced upon it.

On this last application the proof submitted consisted, among other things, of a current inspection, a detailed report by an architect retained by the tenants, and photographs of various portions of the building. The landlord offered some proof to show that the repairs and restorations that it had claimed it had made in 1950 had indeed been made, but in the middle of the proceedings stopped offering proof on the ground that the reopening was illegal and unwarranted, the issue having been theretofore determined without protest on two different occasions. The State agency ruled that the proceeding had been properly reopened because of the landlord's fraud, and that the premises were not entitled to exemption. It held that a change from a nonhousing to a housing use entitling an owner to exemption from rent controls is not accomplished by putting an abandoned old-law tenement back on the rental market when the apartments remain substandard slums. The property was determined to be subject to controls, and the proceeding was remanded to the local rent administrator for the fixing of maximum rents. At this point, the landlord instituted this proceeding under article 78 of the Civil Practice Act, and Special Term held that the State agency had no jurisdiction because the premises were exempt from controls under the statute.

In the 1953 proceeding, the one before us, the State agency had before it ample evidence to support its finding that the earlier proceedings had been based upon misrepresentations

made to it as to the extent of repairs and restorations made to the buildings. It could find, as it did, that the landlord deliberately made a false application as to the extent of repairs, and that the State agency and its inspector were misled. It was entitled to rely, if it wished, upon the detailed report prepared by the architect retained by the tenants, as well as upon the current inspection made by its own investigator. Moreover, the photographs which are before us present indubitable proof that what the landlord reintroduced to the rental market was a wretched and degraded slum, substantially unchanged from what had existed before. Consequently, assuming that the state agency had jurisdiction over the building, it was entitled to reopen the proceedings because of the fraud practiced on it. (See *People ex rel. Finnegan* v. *McBride,* 226 N. Y. 252, 259; *Matter of Equitable Trust Co.* v. *Hamilton,* 226 N. Y. 241, 244; *Matter of Schneider* v. *McGoldrick,* 282 App. Div. 1055; *Matter of Cupo* v. *McGoldrick,* 278 App. Div. 108, and *Matter of D & D Realty Corp.* v. *Coster,* 277 App. Div. 668.) Administrative agencies, certainly to the extent that they are not exercising purely quasi-judicial functions, may reopen and redetermine matters in which they have been misled by fraud. (E.g., *People ex rel. Hotchkiss* v. *Supervisors,* 65 N. Y. 222, 225 *et seq.*; *Matter of Marinick* v. *Valentine,* 263 App. Div. 564, affd. 289 N. Y. 780; 73 C. J. S., Public Administrative Bodies & Pro., § 156 *et seq.*; 42 Am. Jur., Public Administrative Law, § 173 *et seq.*)

We now turn to the question whether the State agency had jurisdiction.

The emergency statute adopted in 1946 did not, for practical purposes, become applicable and effective until May 1, 1950. It had been until that later time a " stand-by " statute, enacted to become effective in the event of the termination of Federal rent controls. It provided for certain types of housing to be exempt from control, others to be subject to decontrol, and the balance to remain under control. The distinction between those exempt from control and those subject to being decontrolled should not be confused. Under paragraph (g) of subdivision 2 of section 2 of the statute it is provided, with certain exceptions, that housing accommodations completed on or after February 1, 1947, shall be exempt from control. The statute goes on to provide that housing accommodations " created by a change from a non-housing to a housing use " on or after February 1, 1947, shall be exempt from control. It is further stipulated that " additional housing accommodations created by conversion "

on or after February 1, 1947, shall also be free from controls, but with this proviso: " provided, however, that any housing accommodations, created as a result of any conversion of housing accommodations on or after May first, nineteen hundred fifty, shall continue to be subject to rent control as provided for herein unless the commission issues an order decontrolling them which it shall do if there has been a structural change involving substantial alterations or remodeling; and such change has resulted in additional housing accommodations consisting of self-contained family units as defined by regulations issued by the commission; provided further, however, that such order of decontrol shall not apply to that portion of the original housing accommodation occupied by a tenant in possession at the time of the conversion but only so long as that tenant continues in occupancy." It is this latter class of housing that is subject to decontrol as distinguished from being exempt from control.

It has been assumed in this case that where premises have been vacant and unused and, as in this particular case, declared unfit for human habitation, and thereafter returned to the rental market, that they are a housing accommodation " created by a change from a non-housing to a housing use." This would be a distortion of language. A nonhousing use involves real property being actually used for a nonhousing purpose, as for example, a commercial use. One-time housing that is in *nonuse* is not devoted to a nonhousing use. In a situation such as this, it is the last use that determines the character of the building. The tenement in question remained tenement housing even if its condition was so dreadful that neither its owners nor the appropriate regulatory authorities would permit it to be used to house human beings. (Semble, in accord: *Matter of Paikoff* v. *McGoldrick,* 280 App. Div. 996 [2d Dept.].) If the premises are in fact devoted to a nonhousing use, and are then altered for use as housing, they are exempt from controls. That was the effect of our holding in *Matter of Kruckel* v. *McGoldrick* (281 App. Div. 811). (Contra, *Matter of Lo Presti* v. *McGoldrick,* 204 Misc. 956 [Special Term, Erie Co.].) Moreover, this carries out the intention of the statute. That intention was to leave free from rent controls either new construction or the equivalent of new construction, namely, property used for purposes other than housing, but converted to a housing use. Under such circumstances the many salutary provisions, relating to newer construction, of the multiple dwelling law and of local ordinances

become applicable, and the health and protection of tenants are adequately safeguarded. Consequently, the reopened tenement in this case did not result from a change in property used for purposes other than housing. In this connection it is appropriate to note that the landlord, for purposes of the multiple dwelling law, would be the first to assert that it is an old-law tenement, and therefore old housing, in order not to come under the provisions of the statutes applicable to later construction.

Accordingly, insofar as this proceeding is concerned, the State agency had jurisdiction and there was power to fix maximum rents.

We should not pass from the subject without adverting to the regulation adopted by the State agency on January 1, 1954 (Rent and Eviction Regulations, § 9, subd. 4, as amd. Dec. 23, 1953, and eff. January 1, 1954). It reads in part: '' Housing accommodations created by a change from a non-housing to a housing use on or after February 1, 1947. Where the housing accommodations so created are contained in a building formerly abandoned or boarded-up, it shall not be deemed to be a change from a non-housing to housing use unless it is shown that there has been a comprehensive rehabilitation of the building resulting in habitable housing accommodations in the building.'' It is this regulation that the State agency has relied on to bolster its position in imposing controls in this case. We do not think the regulation necessary, for the reasons given above. If it were necessary, the regulation would nevertheless not be effective. The regulation purports to give the commission power, in making a determination whether a housing accommodation has been created by a change from a nonhousing to a housing use, to consider whether the building formerly abandoned has been the subject of comprehensive rehabilitation. This is more than a clarification of past policy. It would involve a substantive change which, under well-known principles, should not be made retroactive to alterations, assuming they had been made as represented, completed and approved four years before. But the purported regulation has a deeper vice. It purports to give the agency power to decontrol that which by the statute is exempt from control. Such power the State agency may not assume, however beneficent its purpose. As we have seen with respect to a change from nonhousing to a housing use, there are other statutes and other agencies in a position to provide safeguards for tenants. With respect to boarded-up and abandoned housing, subject to old housing standards, different principles are applic-

able.  This is, in the first instance, existing housing, and still subject to control.

It is recognized that we may be confronted with what may be a hiatus in the statutory plan requiring eventual solution.  The incentive of exemption from control or of decontrol is extended to owners and landlords who provide new or additional housing accommodations.  There is no express provision to cover the landlord who substantially rehabilitates an old abandoned tenement, as the landlord in this case had represented, and, we assume, falsely, he had done.

A landlord who truly effects a substantial rehabilitation is performing a valuable service in providing increased housing occupancy.  This is so even if he may not be increasing the number of housing accommodations from what had existed before.  It is evident that the intent of the statutory plan was to provide such a landlord with the incentive of decontrol, after appropriate investigation and certification by the State agency.  That situation, when it arises, may perhaps be met in, at least, either of two ways.  The one way would be to consider whether the rehabilitation was of such an extensive character that it is the equivalent of new construction, for the purpose of the emergency statute.  The other way would be to consider whether the literal language relating to '' additional housing accommodations '' may not be construed broadly enough to embrace the re-entry into the market of vacant housing as coming within its intended meaning.  In either event, the State agency may have an initial jurisdiction to determine whether the premises, which had theretofore been subject to regulation under the emergency statute, had become entitled to exemption on the one hand, because the premises are regarded as new construction or to an order of decontrol on the other, because the premises are regarded as providing additional housing accommodations (*Matter of Ransom* v. *McGoldrick,* 282 App. Div. 566).

For the reasons indicated, therefore, the landlord in the instant case who purports to restore an unfit slum tenement, abandoned and shut, to housing occupancy, is in the first instance subject to the regulatory examination of the State agency.  If it is then found that the restoration amounts to no more than a re-entry into the market of a one-time slum, the premises, on any theory suggested, remain subject to control.  If a fraud was successfully practiced in the making of the original application, the proceedings may be reopened, and controls reinstated.  If there

were no maximum rents in effect on March 1, 1950, as provided in section 4 of the emergency statute, there is ample authority in the State agency to fix the maximum rents in accordance with subdivision 3 of such section 4 of the statute.

Accordingly, the order of Special Term annulling the determination of the State Housing Rent Administrator should be reversed, and the matter remitted to the State agency for remand to the local rent administrator to fix the maximum rents.

Peck, P. J., Dore, Callahan and Bergan, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the respondent-appellant, and the matter remitted to the State Rent Administrator for remand to the local rent administrator to fix the maximum rents. Settle order on notice.