In the Matter of SIPAL REALTY CORPORATION, Respondent. MARTIN L. DANKERS et al., Appellants.

First Department, June 18, 1959.

*William L. Messing* for Martin L. Dankers and others, appellants.

*Theodore B. Wolf* of counsel (*Frederick B. Sussmann* with him on the brief; *Zalkin & Cohen,* attorneys), for respondent.

*Per Curiam.* Respondents, tenants in premises located on West 57th Street in this city, appeal from an order of Special and Trial Term which determined that 60% of the units in their building had been converted from residential to business space. Consequently it established rentals pursuant to section 2 of the Business Rent Law (L. 1945, ch. 314, § 2, as amd.).

The primary question involved is whether 60% of the premises in question are " lawfully " occupied as business space. This question in turn depends on whether the landlord, in providing for the conversions, was required to comply with section 13 of the State Rent and Eviction Regulations, adopted pursuant to the State Residental Rent Law (L. 1946, ch. 274, as amd.). Section 13 provides that although premises are actually converted from residential to commercial or professional use, they shall continue to be subject to residential rent control until an " exemption " is issued by the Rent Administrator.*

It is, of course, not quite accurate to say that section 13 of the regulations merely limits the landlord to the maximum rent which it may collect. The regulation states explicitly, in the

---

* The section provides: " Any housing accommodation subject to these Regulations which may be rented on or after May 1, 1955 for commercial or professional use shall continue to be subject to control and the landlord may not collect more than the maximum rent until an order is issued by the Administrator exempting the housing accommodation from these Regulations during the period of occupancy by the tenant. Such order shall be issued by the Administrator where he finds that the renting complies with the requirements of state and local authorities and was made in good faith without any intent to evade the Act or these Regulations and shall be effective as of the date of the commercial or professional renting."

conjunctive, that the premises " shall continue to be subject to control and the landlord may not collect more than the maximum rent ". For premises to remain subject to control means that there is also supervision of the right of a statutory tenant to retain possession of the premises and the maintenance of essential services for the diminution of which a reduction in rent below the maximum is authorized by law.

There is no dispute that 60% of the units in the building are presently used as business space. It is also undisputed that the landlord has not secured an " exemption " for 15 units which were converted from residential to business use after the effective date of section 13. If section 13 is valid and applicable then these apartments must be excluded from the number of units alleged to have been converted, and the landlord has failed to establish the minimum required number of conversions.

Under subdivision (a) of section 2 of the business space statute, entire premises may be treated as business space only when 60% of the rentable area and 60% of the total number of units formerly used as dwelling space are " lawfully " occupied as business space. There is nothing in the statute or in the submitted legislative history to indicate that the requisites of a lawful conversion are to be determined solely with reference to the Business Rent Law. The several emergency rent control laws were first enacted at two successive sessions of the Legislature (L. 1945, ch. 3; L. 1945, ch. 314; L. 1946, ch. 274). If at all possible the statutes should be read together (McKinney, Cons. Laws of N. Y., Book 1, Statutes, § 221 *et seq.*).

Pursuing the matter further, the courts have long recognized the primary responsibility of the Rent Administrator with respect to the decontrol of residential properties, as distinguished from premises wholly and always outside the jurisdiction of the commission. (*Matter of Schonbuch* v. *Abrams,* 1 A D 2d 658; *Matter of Fiesta Realty Corp.* v. *McGoldrick,* 284 App. Div. 551, revd. on other grounds 308 N. Y. 869.) Section 13 was adopted by the Administrator to prevent the circumvention of the residential rent laws through the mere guise of a conversion to professional or commercial use. Though the regulation is found only in the State Residential Rent Regulations, its effect should not be so limited. If a valid regulation it has the full status of law (L. 1946, ch. 274, § 4, subd. 4; 1 N. Y. Jur., Administrative Law, § 103).

Nor is the fact that section 13 was adopted long after the rent control laws were first enacted of dispositive significance. It is true, as Special Term noted, that the Legislature did not

authorize specifically a regulation such as section 13. But there is no doubt about the Rent Administrator's power to adopt regulations to prevent circumvention of the residential rent control laws, and the phrase "lawfully occupied as business space" must be construed to encompass such rules of law as are in effect at the time landlord seeks to convert his property from residential to business space. A contrary view would freeze the requirement of lawful occupancy to the statutory and administrative pattern which existed in 1945. There is insufficient warrant for such conclusion. Moreover, it is beside the point that section 13 may be designed in the first instance to protect the tenant whose premises are purportedly converted, for the statute under which wholesale exemption of the building is involved has as its beneficiaries the concededly residential tenants. It thus suffices that they are, to a limited extent, the beneficiaries of the statute under which the present proceeding is brought. It is that statute which, by direct reference, requires compliance with the State Residential Rent Law and the State Rent and Eviction Regulations made thereunder.

It may be, on the undisputed proof in this record, that the landlord would be entitled to an order granting an "exemption" if application were made to the Rent Administrator. Once the facts establishing a bona fide conversion are presented the Administrator has no discretion to deny such an "exemption". However, such a showing must first be made to the Administrator, in his threshold jurisdiction, before proof of conversion may be presented collaterally in another proceeding.

Accordingly, the order granting petitioner's application for a determination of rent should be reversed, on the law, and the petition dismissed, without costs to any party.

VALENTE, J. (dissenting). By chapter 417 of the Laws of 1952, subdivision (a) of section 2 of the Business Rent Law was amended to define as "Business space", a building, in which, after March 1, 1952 "at least sixty per centum of the total rentable area and sixty per centum of the total number of units formerly used as dwelling space, is lawfully occupied as business space on such date". The owner of premises 200 West 57th Street, alleging that after March, 1952, at least 60% of the total rentable area and 60% of the total number of units formerly used as dwelling space had become, and was now, lawfully occupied as business space, brought this proceeding to fix an emergency rent pursuant to subdivision (c) of section 2 of the Business Rent Law. The petition was sustained as a pleading in *Matter of Sipal Realty Corp. (Dankers)* (5 A D 2d 84, affd. 4 N Y 2d 1026).

This court now reverses an order, after a trial fixing the emergency rent, on the ground that the petitioner failed to prove that 60% of the premises is " lawfully " occupied as business space, even though, as the *Per Curiam* opinion states, " There is no dispute that 60% of the units in the building are presently used as business space ". The asserted lack of " lawful " occupancy is predicated on the failure of the owner to obtain an order of exemption from the Rent Administrator, pursuant to section 13 of the State Rent and Eviction Regulations, for 15 units which were converted to business use after May 1, 1955, (the effective date of section 13).

I must dissent. Since admittedly the character of the premises has been changed from residential to business, section 13 is wholly inapplicable. (See *Matter of 114 East 40th Corp.* v. *Armstrong,* 14 Misc 2d 984.)

Section 13 by its terms refers to " any housing accommodation * * * which may be rented * * * for commercial or professional use ". The State Residential Rent Law (§ 2, subd. 2; L. 1946, ch. 274, as amd.) defines " housing accommodations " as " Any building or structure, permanent or temporary, or any part thereof, occupied or intended to be occupied by one or more individuals as a residence, home, sleeping place, boarding house, lodging house or hotel ". The same definition appears in section 2 of the State Rent and Eviction Regulations. Clearly the 15 units in question — from which, before they were rented for business purposes, all kitchen equipment was removed, and which were physically altered pursuant to plans filed with the Building Department so as to adapt them for such business use — had lost their character as " housing accommodations ". Hence, there was no rental of them as " housing accommodations " for commercial or professional use. These were units which were proven to have been converted to be used exclusively for business purposes and not in any sense for residential use.

The language of section 13 merely limits the amount of rent a landlord may collect, i.e., he may not collect any sum in excess of the maximum residential rent until the Administrator has issued an order exempting housing accommodations from the regulations. There is nothing in the section which makes the occupancy by a business tenant unlawful. Moreover, in this proceeding it is not the tenants of the converted space nor the Rent Administrator who are invoking the sanctions of section 13, but tenants of residential space who are not encompassed within the letter or purpose of the regulation. Were section 13 in any way material, it would not lie within the power of appel-

lants to urge its applicability. Hence, the court is not only misapplying the section but doing so on behalf of persons obviously not intended as beneficiaries of its terms.

Any doubt as to the inapplicability of section 13 to the instant proceeding should be dispelled by an examination of the statement of the State Housing Rent Commission of the considerations for the adoption of that regulation. (The note of the commission appears as an annotation following section 13 of the regulation in McKinney's Cons. Laws of N. Y.) The commission states that the amendment was " directed against unscrupulous landlords who use two devices to evade rent ceilings. The first is the device of compelling a tenant to sign a lease for a commercial apartment when actually it is to be used only for residential purposes ". This was to be " controlled more effectively by requiring the written approval of the Commission prior to any renting of a residential apartment for allegedly professional or commercial usage ". The second evasion, not pertinent here, deals with the rental of unfurnished apartments as furnished ones. The emphasis is obviously upon the protection of tenants of " residential " apartments from overreaching by landlords who would resort to a purported commercial use as a subterfuge for charging a higher rent. Further, to emphasize the purely monetary aspects of the regulations, the commission adds: " A landlord who fails to obtain this written approval will automatically become liable to a treble damage action *by the tenant whom he attempts to overcharge* through the device of a commercial or professional lease."

The court, while asserting that on the undisputed proof in this record the landlords would probably be entitled to an order of " exemption " from the Administrator, nevertheless, states that " such a showing must first be made to the Administrator, in his threshhold jurisdiction, before proof of conversion may be presented collaterally in another proceeding." This equates the pleading of compliance with section 13 with a condition precedent to the maintenance of the instant proceeding. I cannot reconcile such a result with our sustaining of the petition in *Matter of Sipal Realty Corp. [Dankers]* (5 A D 2d 84, affd. 4 N Y 2d 1026). If what the court now holds is valid, the petition should have then been dismissed, rather than sustained, by this court. While I was one of the two dissenting Justices in the prior appeal, I think that in sustaining the validity of the petition, the court implicitly negatived the controlling effect now given to section 13, even though the point was not directly raised.

I would therefore affirm the order below.

BOTEIN, P. J., BREITEL, M. M. FRANK and STEVENS, JJ., concur in *Per Curiam* opinion; VALENTE, J., dissents and votes to affirm in opinon.

Order granting petitioner's application for a determination of rent reversed, on the law, and the petition dismissed, without costs to any party.

Settle order on notice.