OPINION OF THE COURT
Ira Gammerman, J.
Motions numbered 89 and 91 on the Special Term Part I calendar of May 6, 1980 are hereby consolidated for disposition and decided as follows:
These petitions seek judgments pursuant to CPLR article 78 annulling determinations that certain apartment units at 157 E. 89th Street, New York City, are subject to rent control and further, establishing the maximum chargeable rents for such apartments.
All the apartments in question had been subject to rent control prior to becoming vacant sometime in 19(?9. They remained vacant for many years as the landlord entertained *367 plans of demolishing the apartment building and creating a high-rise building in its stead. The landlord’s plans eventually were abandoned, and in 1977, the vacant apartments were again rented. Extensive repairs and reconstruction were needed before the tenants could occupy the premises.
It is landlord petitioner’s position that each of the apartments had so deteriorated during their vacancy that each had ceased to be a “housing accommodation”. Petitioner maintains that when the apartments were reconstructed, they constituted new housing, not subject to rent control. Petitioner further alleges that, should the apartments be subject to rent control, then the rent chargeable is the maximum base rent fixed for each unit as of 1979. The respondent maintains that the rent should be calculated according to the date(s) in 1977 when the tenants’ term (s) began. The rent according to this formula is below the 1979 maximum base rent.
The court finds that the subject premises did not cease to be “housing accommodations” merely by reason of the vacancy from 1969 to 1977. Subdivision e of section 2 of the New York City Rent, Eviction and Rehabilitation Regulations defines housing accommodations as “any building or structure, permanent or temporary, or any part thereof, occupied or intended to be occupied by one or more individuals as a residence, home, sleeping place [etc.]”. Housing that has fallen into such disrepair that it is uninhabitable by any standards nevertheless remains a housing accommodation for statutory purposes. This issue was considered in Matter of Fiesta Realty Corp. v McGoldrick (284 App Div 551, revd 308 NY 869). The court there stated (284 App Div, at p 556) : “A nonhousing use involves real property being actually used for a nonhousing purpose, as for example, a commercial use. One-time housing that is in nonuse is not devoted to a nonhousing use. In a situation such as this, it is the last use that determines the character of the building. The tenement in question remained tenement housing even if its condition was so dreadful that neither its owners nor the appropriate regulatory authorities would permit it to be used to house human beings. *368 (Semble, in accord: Matter of Paikoff v. McGoldrick, 280 App. Div., 996 [2d Dept.].)”
Thus, petitioner’s argument that the. apartments should not be subject to control on the basis of their alleged “non-housing accommodation” status is without merit. The apartments remained “housing accommodations” despite their vacancy and rundown condition.
Nor did their rehabilitation constitute the creation of new housing, so as to exempt them from control pursuant to section 2 (subd f, par [8]) of the Rent, Eviction and Rehabilitation Regulations which exempts “[h]ousing accommodations which were completed on or after February 1, 1947.” Petitioner’s citation of Matter of Newport Assoc. v Leventhal (50 AD2d 741) is inapposite. In Newport, a building was purchased for demolition and assemblage of a parcel. The subject apartment was stripped by the owner of appliances and plumbing. Subsequently, the building was sold and the new owners decided to return the premises to the rental market. The new landlords engaged in extensive refurbishment and restoration of the subject apartments before renting it out. In an opinion later affirmed by the Appellate Division, Mr. Justice Callahan found that these activities did “in fact, create housing units, where none had existed for many years.” (Matter of Newport Assoc., NYLJ, Feb. 18, 1975, p 2, col 5; p 15, col 1.)
In the instant case, rehabilitation was not the result of the landlord’s efforts to create new or additional housing accommodations for the rental market. The landlord put the premises on the market “as is”. The restoration was performed primarily by the tenants. While the Legislature has sought to encourage expansion of the housing stock through various exemptions from control, it is inconceivable that this policy extends to landlords who knowingly permit deterioration and then let uninhabitable premises to ambitious tenants. Therefore, respondent’s determination that the premises retained their rent controlled status is hereby upheld.
Petitioner argues that even if respondent’s determination of rent controlled status is correct, that respondent’s calculation of the rental rate is erroneous. The court finds that *369 respondent’s determination is based on sound reasoning. No maximum base rent (MBR) had been established for the subject premises at the time the tenants took possession, evidently because the landlord failed to apply routinely for MBR adjustments. Parenthetically, the court notes that the provisions requiring respondent to fix an MBR depend on a landlord’s co-operation. Since there was no MBR adjustment prior to 1979, the respondent could only fix the maximum collectible rent on the basis of the rate prevailing on the date of the tenants’ occupancy. Petitioner’s reliance on section Y51-5.0 (subd a, par [5]) of the Administrative Code of the City of New York is misplaced. That section provides in part that “Where a housing accommodation is vacant on January first, nineteen hundred seventy-two, or becomes vacant thereafter by voluntary surrender of possession by the tenant, the maximum rent established for such accommodation may be collected.” However, a review of both paragraphs (4) and (5) of subdivision a of section Y51-5.0 in their entirety indicates that this provision comes into play only after MBR has been established and a vacancy occurs. In the instant case, the vacancies occurred prior to establishment of the MBR. The landlord is, therefore, confined to collection of the maximum collectible base rent, or MCBR, with annual increments as provided by statute, until the rental rate has reached the maximum base rent or MBR.
For the foregoing reasons, the petition is denied.